UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| William O. Cook, | Civil No. 06-865 (PAM/FLN) |
| Plaintiff, | |
| v. | |
| Linda McMahon<br>Commissioner of Social Security, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Sean M. Quinn, for Plaintiff .
Lonnie F. Bryan, Assistant United States Attorney, for the Government.

Plaintiff William O. Cook seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner"), who denied his application for disability insurance benefits ("DIB"). See 42 U.S.C. § 1382 (c). This Court has appellate jurisdiction over the claim pursuant to 42 U.S.C. §§ 405 (g). The matter was referred to the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). The parties have submitted cross-motions for summary judgment [#6 and #9]. For the reasons set forth below, it is the Court's recommendation that the Defendant's motion for summary judgment be granted.

## I. INTRODUCTION

Plaintiff applied for DIB on September 4, 2002, alleging he became disabled on June 3, 2002. (Tr. 49-51.) His alleged impairments are disc damage to lower and upper back, torn left ACL and smashed right big toe. (Tr. 24, 156.) The Social Security Administration denied the application initially (Tr. 23-25) and upon reconsideration. (Tr. 26-28.) Plaintiff filed a timely request for a hearing, which was held before Administrative Law Judge ("ALJ") Michael Quayle on September

18, 2003. (Tr. 39, 43, 435-54.) Plaintiff was represented by counsel and testified on his own behalf. (Tr. 437-49.) A vocational expert ("VE"), Wayne Onken, also testified. (Tr. 449-52.) The ALJ rendered an unfavorable decision dated April 15, 2004. (Tr. 13-19.) The ALJ determined that Plaintiff's residual functional capacity ("RFC"), prevented him from performing his past relevant work, but concluded the Plaintiff could perform a significant number of jobs in the national economy. (Tr. 18-19.) On June 5, 2004, Plaintiff appealed that unfavorable decision to the Appeals Council. (Tr. 9, 433-34.) The Appeals Council denied review on February 3, 2006, making the decision of the ALJ the final decision of the Commissioner. (Tr. 5-7.)

Plaintiff initiated this action in federal court seeking judicial review on February 27, 2006. (Docket #1.) He moved for summary judgment June 21, 2006 [#6]. The Commissioner filed her motion for summary judgment on July 10, 2006 [#9]. Plaintiff raises one issue in his motion: whether the ALJ erred when he failed to give the opinions of Plaintiff's treating physicians controlling weight in making the determination regarding Plaintiff's residual functional capacity (RFC). As the Court agrees with Defendant that the ALJ was not required to give those opinions controlling weight, the Court concludes that the ALJ's determination of the Plaintiff's RFC is supported by substantial evidence on the record as a whole. Defendant's motion must be granted and Plaintiff's motion must be denied.

## II. STATEMENT OF FACTS

### A. Background

Plaintiff was born on April 30, 1951, and was fifty one years old at the time of his alleged date of onset. (Tr. 437.) Plaintiff lives with his wife and three children in Hibbing, MN. (Tr. 437-38.) Plaintiff has spent all of his life working as a carpenter in the mining industry. (Tr. 157.) He

has a degree in elementary and physical education from the University of North Dakota. (Tr. 162.)

### B.     Medical Evidence

Plaintiff has a long history of work related injuries and corresponding workers compensation claims. From 1990 until Plaintiff's date of disability, June 3, 2002, Plaintiff suffered a multitude of injuries. The injuries have included a fracture in his great toe (Tr. 341), fractures in his fifth finger (Tr. 333, 337), numerous allergic reactions to bee stings (Tr. 335-36; 404), a knee injury requiring surgery (Tr. 239; 241; 413-28), neck pain as a result of being in an automobile accident at work (Tr. 265), and knee pain as a result of being hit by a truck in the work parking lot (Tr. 317.)

The predominant physical injury that Plaintiff has suffered and the impetus for his claim of disability is chronic back pain. Leading up to Plaintiff's onset of disability, he received care and treatment from Dr. Jon Rudberg, as his primary care physician, and Dr. Michael J. Quirk, as his chiropractor. He also received evalution and treatment from neurosurgeon Dr. Scott C. Dulebohn.

Dr. Quirk has treated Plaintiff for back pain since 1990. (Tr. 266.) Dr. Quirk initially treated Plaintiff for three separate back injuries in the span of six months. (Tr. 263.) He holds the opinion that these injuries have led to the difficulties experienced by Plaintiff to this day. (Tr. 265.) Dr. Quirk has diagnosed Plaintiff with back pain caused by permanent degenerative disc and joint disease. (Tr. 266-67.)

After his back injuries in 1990, Plaintiff did not return to Dr. Quirk's office until 1995 when he re-injured his back. (Tr. 264.) Since 1995, Plaintiff has been treated by Dr. Quirk on an increasingly frequent basis for lower back pain. (Tr. 265.) From May 2001 until the date of disability, Plaintiff received treatment from Dr. Quirk on a weekly basis. (Tr. 257-302.) Over that time, Dr. Quirk issued 15 orders for Plaintiff to abide by work restrictions of working no more than

40 hours per week and not lifting in excess of 25 pounds. (T. 257, 259, 260, 262, 268, 271, 273, 275, 279, 282, 285, 289, 294, 299, 302.)

Dr. Rudberg began treating Plaintiff for back pain in September 1999, when Plaintiff was admitted into the emergency room for back pain. (Tr. 322-23.) At that time, Dr. Rudberg diagnosed Plaintiff with back pain that stemmed from injuries in January 1990. (Tr. 322.) Dr. Rudberg diagnosed degenerative disc disease as the cause of Plaintiff's back pain. (Tr. 406.)

In March 2001, Dr. Quirk referred Plaintiff to Dr. Rudberg for back pain. (Tr. 320.) Dr. Rudberg diagnosed Plaintiff with lumbar herniated disc syndrome. (Tr. 320.) During that month, Dr. Rudberg ordered an MRI of Plaintiff's lumber spine showing mild annular bulging between the various lumbar discs and degenerative disc disease. (Tr. 236.) A MRI of the cervical spine, taken in September 2001, revealed degenerative disc disease and degenerative joint disease. (Tr. 240.)

Dr. Rudberg referred Plaintiff to Dr. Dulebohn for evaluation of Plaintiff's back pain. (Tr. 216-218.) After evaluation on May 14, 2001, Dr. Dulebohn recommended a series of facet blocks, a surgical procedure where nerve fibers are destroyed to block pain. (Tr. 217.) Dr. Dulebohn conducted the procedure on July 18, 2001, and August 8, 2001. (Tr. 228, 232.) Dr. Dulebohn recommended further facet blocks in the future as pain returned. (Tr. 228.)

Plaintiff had two medical examinations in connection with worker's compensation claims. (Tr. 219-26; 242-47.) Dr. Donald Starzynski, neurologist, conducted an independent medical examination on June 7, 2001. (Tr. 219-26.) Dr. Starzynski concluded that Plantiff had chronic musculoskeletal lumbar spine pain with some radiating pain into the extremities. (Tr. 224.) He found degenerative disease in the lumbar region. (Tr. 224.) He concluded that Plaintiff required a light duty work restriction due to his degenerative spine disease that included lifting no more than

4

25 pounds and avoidance of sustained repetitive activities. (Tr. 225.) Dr. Starzynski opined that he believed that Plaintiff's condition should be expected to get worse. (Tr. 226.) At the request of Plaintiff's counsel, a second medical evaluation was conducted by Dr. Duane Person on January 17, 2002. (Tr. 242-47.) Dr. Person diagnosed Plaintiff with multilevel degenerative disc disease of the cervical and lumbar regions of the spine. (Tr. 245.) Dr. Person stated that Plaintiff should be restricted to lifting no more than 20 pounds with restrictions on repetitive lifts and movements. (Tr. 246.)

Dr. Rudberg treated Plaintiff on April 5, 2002, for injuries resulting from being hit by a truck in the parking lot at National Steel. (Tr. 317.) This treatment focused on injuries to Plaintiff's lower extremities. (Tr. 317.) Dr. Rudberg cleared Plaintiff to work, so long as he didn't bend his right knee. (Tr. 317.) After an examination on April 12, 2002, Dr. Rudberg cleared Plaintiff for work with the restriction that he not do any extensive bending, stooping, or twisting. (Tr. 316.) On May 3, 2002, Dr. Rudberg saw Plaintiff and noted even more improvement of the knee. (Tr. 315.)

On June 3, 2002, the date of disability, Dr. Quirk treated Plaintiff for an exacerbation of his back pain. (Tr. 255.) In the three months after the exacerbation of injury, Dr. Quirk treated the Plaintiff 26 times. (Tr. 249.) Dr. Quirk continually signed orders stating that the Plaintiff was completely unable to work after the exacerbation. (Tr. 250-55.) The medical records from Dr. Quirk extend until late August 2002. As of that time, Dr. Quirk found Plaintiff unable to work. (Tr. 248, 250.)

Dr. Rudberg also treated the exacerbation of Plaintiff's back injury that occurred on June 3, 2002. On June 5, 2002, Dr. Rudberg saw Plaintiff and ordered that Plaintiff be taken off work for one week due to the exacerbation of his back injury. (Tr. 313, 314, 394.) Dr. Rudberg saw

5

Plaintiff again on June 13, 2002, and ordered that Plaintiff be taken off work for another two weeks. (Tr. 312.) Dr. Rudberg also took images of Plaintiff's lumbar spine that showed "severe degenerative disc disease", compared to the "moderately severe degenerative disc disease" exhibited in prior imaging from March 6, 2001. (Tr. 352, 354.) Dr. Rudberg continued to treat Plaintiff for the back pain through the end of 2002. (Tr. 307-11.) During these examinations, Dr. Rudberg noted no atrophy, tenderness, and a positive straight leg raise in the left side and a negative in the right side. (Tr. 307-13.) On January 23, 2003, Dr. Rudberg stated that Plaintiff was unable to work since June 3, 2002, and should be kept off work for the next few months. (Tr. 388, 391.)

Dr. Rudberg referred Plaintiff back to Dr. Dulebohn for another facet block to alleviate the pain. (Tr. 309.) Plaintiff saw Dr. Dulebohn in November of 2002. Dr. Dulebohn took an image of Plaintiff's lumbar region and noted "severe changes" in his back condition. (Tr. 365.) Dr. Dulebohn recommended another facet block. (Tr. 365.) Plaintiff never received another facet block because his worker compensation claim for this treatment was not approved. (Tr. 387, 429.)

Dr. Rudberg saw Plaintiff on April 8, 2003, and said that he should still be kept off work. (Tr. 387-88.) Dr. Rudberg kept Plaintiff off work until June 8, 2003, when he determined that Plaintiff could do light work[1] for 10 hours per week. (Tr. 431-32.) Dr. Rudberg continued this light work restriction for 10 hours per week on July 8, 2003. (Tr. 429-30.)

Although Dr. Rudberg maintained Plaintiff on no work and light work for 10 hours per week

---

[1] Dr. Rudberg described light work as:
> Lifting 20 pounds maximum with frequent lifting and/or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be a negligible amount, a job is in this category when it requires walking or standing to a significant degree when it involves sitting most of the time with a degree of pushing and pulling of arm and/or leg controls.

(Tr. 429.)

6

restrictions, a state agency reviewed Plaintiff's record, on October 28, 2002, and January 8, 2003, and opined that Plaintiff could perform light level work for 40 hours per week. (Tr. 377, 383.) The state agency defined light level work as occasionally lifting 20 pounds, frequently lifting 10 pounds, standing/walking about six hours out of eight, and sitting intermittently. (Tr. 377.)

### C.    Plaintiff's Testimony

Plaintiff testified at the hearing before the ALJ. (Tr. 437-48.) Plaintiff testified that he lives with his wife and children in Hibbing, MN. (Tr. 439.) Plaintiff testified that he holds a degree in elementary education from the University of North Dakota, but he did not pursue teaching as a career because the pay was too low. (Tr. 438, 444.)

Plaintiff testified that while working in the mines he has suffered 21 work related injuries. (Tr. 444.) Plaintiff has filed worker's compensation claims to accompany some of the injuries. He went on temporary total disability as of June 2002, but the benefits ended in early 2003. (Tr. 441.) He obtained a part-time job for 10 hours a week at $6 per hour in June 2003. (Tr. 442.)

Plaintiff testified that he has ongoing back pain which was exacerbated in June 2002. (Tr. 439-40.) In reference to his non-back injuries, Plaintiff testified that he has had arthroscopic surgery on his knee, but that didn't repair the ACL. (Tr. 446.) He also testified that he suffered a foot injury that will still cause him periodic pain when he puts weigh on it. (Tr. 446.)

Plaintiff testified that back and knee pain forced him into light duty work in 1996. (Tr. 446.) He testified that he was unable to receive a facet block after the date of disability because it was not approved by worker's compensation; instead he received physical therapy. (Tr. 447.)

### D.    Vocational Expert's testimony

At the hearing, Wayne Onken, vocational expert, testified. (Tr. 448-52.) The ALJ posited Plaintiff's limitations as occasionally lifting 20 pounds; frequently lifting 10 pounds; standing for six hours; sitting for six hours; unable to use ladders, ropes or scaffolding; occasionally using ramps and stairs; occasionally stooping, crouching and crawling; and requiring avoidance of exposure to hazardous machinery and heights. (T. 449.) Mr. Onken testified that with these limitations Plaintiff would be unable to return to his past work as a carpenter. (Tr. 449.) Mr. Onken testified that with these limitations Plaintiff could work as a general sales representative, retail sales clerk, and telemarketer. (Tr. 450.)

### E.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential process outlined at 20 C.F.R § 404.1520. (Tr. 14.) In the first step of the analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability. (Tr. 14.) The second step in the sequential evaluation is to determine whether Plaintiff is subject to any severe medically determinable physical or mental impairment. (Tr. 14.) The ALJ found that Plaintiff has a history of neck and low back pain with imaging evidence of degenerative disc disease and degenerative joint disease of the cervical spine. (Tr. 14.) The ALJ also found that the medical evidence shows a history of injuries to the left medial meniscus, lateral meniscus and anterior cruciate ligament. (Tr. 14.) The ALJ deemed the impairments to the back and left knee to be severe and significantly interfere with Plaintiff's ability to work. (Tr. 14.) The regulations next require a comparison of the claimant's severe impairment with the impairments listed in Appendix 1, Subpart P, Regulations No. 4, Listing of Impairments. (Tr. 14.) The ALJ concluded that the Plaintiff did not have an impairment or combination of impairments that met or

equaled the criteria under the Listing of Impairments. (Tr. 15.)

The last two steps in the evaluation require the ALJ to determine whether the claimant has the RFC to perform his past relevant work, or lastly, any other work existing in significant numbers in the national economy. In determining Plaintiff's RFC, the ALJ considered the medical record, the vocational expert's testimony, Plaintiff's testimony, and the credibility of Plaintiff's subjective complaints in accordance with 20 C.F.R. § 404.1529 and Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). The ALJ discounted the Plaintiff's subjective complaints as not supported by the record as a whole. (Tr. 16.) The ALJ determined prior to the date of disability the Plaintiff had work restrictions that limited him to a lifting restriction of 25 pounds and limitations on repetitive movements.. (Tr. 16.) The ALJ acknowledged Plaintiff's doctors restricted Plaintiff to no work or limited part-time work after the date of disability. (Tr. 16.) However, the ALJ found little change between the objective medical findings before and after the date of disability. (Tr. 16.) The ALJ specifically stated:

> [T]he medical record documents a diagnosis of only an exacerbation of back pain in June 2002, with minimal objective medical findings, including slight lumbar tenderness, and intermittently positive straight leg raising in June 2002, with normal reflexes; positive straight leg rasing in July 2002, with no atrophy; positive straight leg raising on the left in August 2002, with paralumbar tenderness, but intact reflexes; positive straight leg raising in October 2002, with lumbar point tenderness; no leg weakness in November 2002; and positive straight leg raising in January 2003, with thoracic tenderness, but intact strength. The record documents no objective findings related to the left knee during this period, complaints of left foot tenderness only in June 2003, with no etiology given and no significant neck complaints. These finds are inconsistent with complete disability, or with restrictions to only very part-time work.

(Tr. 16.) The ALJ also found Plaintiff's course of treatment to be inconsistent with disabling pain because "he pursued treatment only with medication, and 26 chiropractic visits from June 2002 through August 2002, and only in May 2003. As of October 2002, the [Plaintiff] rated his pain at

9

a level of 2-3/10, which is inconsistent with disabling pain." (Tr. 16.) The ALJ acknowledged that the treatment plan was affected by denial of worker's compensation benefits, but found an absence of any other attempts by the Plaintiff to receive treatment. (Tr. 17.) The ALJ finally found:

> that the record documents only a temporary exacerbation in the [Plaintiff's] chronic back pain condition, with significant improvement noted by October 2002 in terms of objective findings and subjective complaints of pain, and a [RFC] consistent with the previous medical opinions regarding the [Plaintiff's] ongoing restrictions, which are consistent with opinions of consulting State Agency medical sources.

(Tr. 17.) Based on this evidence, the ALJ determined that since June 3, 2002,

> [Plaintiff] has had the [RFC] for work requiring lifting no more than 20 pounds occasionally and 10 pounds frequently, standing/walking six hours in an eight hour work day, and sitting six hours in an eight hour work day, with no use of ladders, ropes, or scaffolds, no work at heights or around hazards, only occasional climbing, bending, stooping, twisting, crouching, kneeling, crawling, or awkward positions, and no repetitive motions of the neck.

(Tr. 17.) With this RFC and the testimony of the neutral vocational expert, the ALJ concluded that Plaintiff could not perform his past relevant work. (Tr. 17.) Based upon the RFC, the vocational expert testified that Plaintiff was capable of jobs such as general sales representative, retail sales clerk, or telemarketer, which exist in significant numbers in the national economy. (Tr. 17.) The ALJ found this testimony "credible, persuasive, and consistent with the record," therefore he concluded that Plaintiff did not meet the relevant statutory criteria for a finding of disability at any time relevant to the adjudication. (Tr. 17-18.)

### III.  STANDARD OF REVIEW

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); see also Qualls v. Apfel, 158 F.3d 425, 427 (8th Cir.1998); Gallus v. Callahan, 117 F.3d 1061, 1063 (8th Cir.1997); Wilson v. Sullivan, 886 F.2d 172, 175 (8th Cir.1989). Substantial

evidence means more than a mere scintilla; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co., v. NLRB, 305 U.S. 197, 220 (1938)). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight. See Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir.1999); see also Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir.1989) (citing Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision. See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir.2000); see also Gaddis v. Chater, 76 F.3d 893, 895 (8th Cir.1996). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently. Roberts v. Apfel, 22 F.3d at 468. (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir.2000); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. Therefore, our review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo. See Flynn v. Chater, 107 F.3d 617, 620 (8th Cir.1997); Roe v. Chater, 92 F.3d 672, 675 (8th Cir.1996). The Court must "defer heavily to the findings and conclusions of the SSA." Howard v. Massanari, 255 F.3d 577, 581 (8th Cir.2001).

Disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In making the disability determination the Secretary promulgated a sequential evaluation process which applies to both physical and mental disorders. 20 C.F.R. §404.1520 outlines the five-step sequential process used by the ALJ to determine whether a claimant is disabled. The disability determination requires a step-by-step analysis. See 20 C.F.R. §404.1520(a). At the first step, the ALJ must consider Plaintiff's work history. At the second step, the ALJ must consider the medical severity of Plaintiff's impairments. At the third step, the ALJ must consider whether Plaintiff has an impairment or impairments that meet or equals one of the listings in Appendix 1 to Subpart P of the regulations. See 20 C.F.R. 404.1520(d). If Plaintiff's impairment does not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of Plaintiff's residual functional capacity and Plaintiff's past relevant work. If the ALJ determines that the claimant can still perform his or her past relevant work, the ALJ will find that the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then the "burden shifts to the Commissioner to prove, first, that the claimant retains the [RFC] to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy." Cunningham v. Apfel, 222 F.3d 496, 501 (8th Cir.2000).

## IV. CONCLUSIONS OF LAW

The question before the Court is whether substantial evidence supports the ALJ's determination that Plaintiff retained the RFC to lift 20 pounds occasionally, 10 pounds frequently, stand /walk/sit for six hours in an eight-hour workday; but could only occassionally climb, bend, stoop, twist, crouch, kneel, crawl, or perform awkward positions; and could not repetitively move his neck. The Plaintiff argues that the treating physicians opinion that Plaintiff is unable to work

must be given controlling weight, therefore the ALJ's determination is not supported by substantial evidence. In determining the RFC, the applicable legal standard governing the opinion of treating physicians is:

> Generally, an ALJ is obliged to give controlling weight to a treating physician's medical opinions that are supported by the record. A medical source opinion that an applicant is 'disabled' or 'unable to work,' however, involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight.

Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 1994) (citations omitted). Such statements by a treating physician are "merely opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner." Id.

In Ellis, the ALJ disagreed with the treating physicians opinion that Mr. Ellis was unable to work. In affirming the District Court, the Eighth Circuit concluded that "although medical source opinions are considered in assessing the RFC, the final determination of RFC is left to the Commissioner." Id. The Eighth Circuit held that the ALJ rightly discredited the treating physicians conclusion as not supported by the record as a whole. Id..

Here, as in Ellis, the ALJ was faced with conclusory opinions from the Plaintiff's treating physicians. Here the ALJ considered the opinions of the treating physicians, and carefully considered the evidence contained in their reports. He also considered the objective medical evidence, subjective medical evidence, and opinions of the state examiners. The ALJ expressly noted the lack of change in the objective medical evidence after the onset date of Plaintiff's alleged disability. As late as October 2002 (4 months after the alleged onset of disability) Plaintiff complained of pain as a "2 to 3 out of ten," which the ALJ concluded was "inconsistent with disabling pain." (Tr. 16) The ALJ also noted the Plaintiff's lack of treatment following the onset

date of his alleged disability. Although a doctor had recommended a further surgical procedure, (similar to surgeries performed with success the year before) Plaintiff testified that he was unable to pursue such treatment because he was denied worker's compensation coverage for the surgeries. The ALJ expressly noted that the denial of coverage appeared to be based in part on the report of a Dr. Litman. As no report from Dr. Litman was submitted to the ALJ here, he concluded that it must have recommended against the treatment, and likely showed minimal objective medical findings. (Tr. 17). The ALJ observed further that his conclusion that Plaintiff suffered only from a "temporary exacerbation" of a chronic back condition that had significantly improved by October 2002, was consistent with the previous opinions of consulting state agency medical sources.(Tr. 377; 383) Accordingly, the ALJ determined that the conclusory opinions of the treating physicians were not supported by the record as a whole and declined to give them controlling weight.

The ALJ's determination is supported by substantial evidence. The only evidence that Plaintiff should have a more restrictive RFC are the opinions of Dr. Rudberg and Dr. Quirk. Their opinions were conclusory and did not specify the physical restrictions that prevented Plaintiff from working. (Tr. 387;391) Dr. Rudberg did not explain the improvement that changed his opinion from no work to 10 hours per week of light work, nor did he explain the nature of the physical restrictions that prevent Plaintiff from working more than 10 hours per week. Dr. Quirk's opinion regarding Plaintiff's inability to work was likewise conclusory. (Tr. 409) The ALJ's RFC is supported by evidence, which includes: the minimal objective findings to support the no work restriction, opinions of state examiners, and Plaintiff's description and treatment of his pain. The Court concludes, based upon the foregoing that the ALJ did not err in rejecting the conclusory opinions of Dr. Rudberg and Dr. Quirk. The ALJ's opinion regarding Plaintiff's residual functional capacity was supported by

substantial evidence on the record as a whole.

## V. RECOMMENDATION

Based on the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment [#6] be **DENIED**; and

2. Defendant's Motion for Summary Judgment [#9] be **GRANTED**.


DATED: February 12, 2007                        s/ *Franklin L. Noel*
                                                FRANKLIN L. NOEL
                                                United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 2, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.